Theresa M. WOLFE, Administratrix of the Estate of Kevin T. Wolfe, Appellant

v.

Robert ROSS, Appellee

v.

State Farm Fire and Casualty Company, Appellee.

Superior Court of Pennsylvania.

Argued Aug. 5, 2014.

Filed May 7, 2015.

James Cole, Pittsburgh, for appellant.

C. Leon Sherman, Pittsburgh, for State Farm, appellee.

BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, SHOGAN, ALLEN, OTT, WECHT, STABILE, and JENKINS, JJ.

OPINION BY BOWES, J.: *

Theresa M. Wolfe, Administratrix of the Estate of Kevin T. Wolfe, ("Administratrix"), appeals from the trial court's grant of summary judgment in favor of State Farm Fire and Casualty Company ("State Farm") and its corresponding denial of her motion for summary judgment. The issue before us is whether the motor vehicle exclusion in Robert Ross's homeowner's policy with State Farm operates to preclude recovery on the facts herein. The trial court concluded that it did, based on this Court's decision in *Wilcha v. Nationwide Mutual Fire Insurance Company*, 887 A.2d 1254 (Pa.Super.2005). Administratrix alleges that the exclusion is ambiguous and inapplicable on the facts herein, and that *Wilcha* should be limited to negligent entrustment or supervision cases. She urges us to adopt and apply the independent concurrent cause rule announced in *State Farm Mutual Automobile Insurance Company v. Partridge*, 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973), as the law of Pennsylvania. After careful review, we affirm.

Administratrix commenced this civil action for wrongful death and survival against Robert Ross. She alleged the following. In late June 2002, Mr. Ross was the host of a graduation party at his residence where alcoholic beverages were fur-

* This matter was reassigned to this author on January 9, 2015.

nished or made available to the guests, including her decedent, nineteen-year-old Kevin. Kevin became impaired "in his judgment, perception, coordination and responses to the point where he was unable to operate any sort of vehicle safely." Complaint, ¶ 7. "As a direct and proximate result of the impairment caused by the alcohol," Kevin left the party on a dirt bike owned by Mr. Ross's son Justin, "lost control of the vehicle, struck a fixed object and suffered fatal injuries in the collision." Complaint, ¶ 8. All allegations against Mr. Ross sounded in negligence and arose from the furnishing of alcohol to the minor.

State Farm, Mr. Ross's homeowner's carrier, refused to defend the claim and denied coverage based on the policy's exclusion for injuries arising out of the maintenance and use of a motor vehicle owned by an insured.[1] Mr. Ross filed a *pro se* answer to the complaint in which he denied that he furnished or provided alcoholic beverages to Kevin. In new matter, he averred that, to the extent Kevin consumed alcoholic beverages, he was contributorily negligent, and his own negligence was the proximate cause of his death.

Prior to trial, the parties agreed to enter a consent judgment against Mr. Ross for $200,000. By terms of the agreement, Mr. Ross assigned to Administratrix all of his rights under his homeowner's policy with State Farm, including the right to sue the insurer for breach of contract and bad faith. In addition, Mr. Ross agreed to cooperate with Administratrix and Administratrix agreed to forego execution against any of Mr. Ross's assets and to accept any verdict or settlement from any proceeding against State Farm in full satisfaction of the judgment. The consent judgment was entered on March 8, 2010.

On December 3, 2010, Administratrix proceeded to attempt to collect the judgment by garnishing the proceeds of Mr. Ross's State Farm homeowner's policy, which had liability limits of $100,000. State Farm and Administratrix stipulated to certain facts. The parties agreed that, "[t]he plaintiff's decedent, while operating a motor vehicle, struck a fixed object off the insured location, and suffered fatal injuries in the collision." Joint Stipulation, ¶ 3. "[Administratrix] contends that coverage is afforded under the terms of the State Farm policy, because [her] decedent died as a direct and proximate result of the impairment caused by the alcoholic beverages allegedly furnished and/or made available to him at a graduation party for Ross' son, which was hosted by Ross, which was covered under the State Farm policy, the policy limits of which are $100,000.00." *Id.* at ¶ 12. "Ross denied that alcohol was provided to the guests, and State Farm contends that even if furnishing alcohol otherwise were covered, the fact that the decedent's death arose out of the operation of a motor vehicle triggers an exclusion which precludes coverage." *Id.* at ¶ 13. Finally, the parties stipulated that "this case is now ripe for a decision as to whether there is coverage for Ross under the State Farm policy for the claims made in the underlying lawsuit[.]"[2] *Id.* at ¶ 16.

---

1. We note that the exclusion herein was limited to injuries resulting from use of an insured-owned vehicle, as in the instant case, or a vehicle operated by or rented to an insured. It did not exclude coverage for injuries arising out of use of **all** motor vehicles.

2. Originally, State Farm retained the right to litigate whether the insured furnished alcohol, and, if so, whether it was a legal cause of the accident. In addition, the insurer reserved the right to challenge whether the agreement between Administratrix and Mr. Ross was fair and reasonable. State Farm subsequently waived those rights and stipulated that if the court determined that the policy covered the claim, judgment could be entered against

Both parties filed motions for summary judgment. The trial court entered summary judgment in favor of State Farm, and denied same as to Administratrix. Administratrix appealed and filed a Pa. R.A.P. 1925(b) concise statement of errors complained of on appeal, and the trial court issued its Pa.R.A.P. 1925(a) opinion.

Administratrix originally presented two issues:

A. Whether the trial court erred in failing to find that the motor vehicle exclusion in a homeowner's insurance policy was ambiguous in that it did not state whether the injury must be proximately caused by use of the motor vehicle or simply causally connected with use of the motor vehicle.

B. Whether the trial court erred in failing to find that the motor vehicle exclusion in a homeowner's insurance policy was inapplicable to claims where the motor vehicle was operated by the victim and where the only claim of negligence against the insured was that he had negligently furnished alcoholic beverages to the underage operator of the vehicle.

Appellant's original brief, at 4. In her supplemental brief, Administratrix focuses on distinguishing *Wilcha*, which involved claims for negligent entrustment and supervision, from the negligent furnishing of alcohol to a minor claim herein. She also urges us to apply the independent concurrent causation rule to find coverage on the instant facts. Appellant's supplemental brief at 3.

■ In reviewing the grant of summary judgment, we "may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion." *Murphy v. Duquesne University,* 565 Pa. 571, 777 A.2d 418, 429 (2001) (citations omitted). "The interpretation of an insurance policy is a question of law that we will review *de novo.*" *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.,* 589 Pa. 317, 908 A.2d 888, 897 (2006). The following principles inform our review. "Our purpose in interpreting insurance contracts is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy." *Babcock & Wilcox Co. v. Am. Nuclear Insurers & Mut. Atomic Energy Liab. Underwriters,* 76 A.3d 1 (Pa.Super.2013). Where the contract language is clear and unambiguous, we must give effect to that language unless it violates a clearly expressed public policy. *Adamitis v. Erie Ins. Exch.,* 54 A.3d 371 (Pa.Super.2012). Alternatively, when a policy provision is ambiguous, it is to be construed in favor of the insured and against the insurer. *Penn–America Ins. Co. v. Peccadillos, Inc.,* 27 A.3d 259, 265 (Pa.Super.2011) (*en banc*). A policy provision is ambiguous only when it is "reasonably susceptible of different constructions and capable of being understood in more than one sense" when applied to a particular set of facts. *Allstate Fire and Casualty Insurance Co. v. Hymes,* 29 A.3d 1169, 1172 (Pa.Super.2011).

■ Herein, State Farm based its defense on a policy exclusion. Thus, the burden was on the insurer to establish its application. *Donegal Mut. Ins. Co. v. Baumhammers,* 595 Pa. 147, 938 A.2d 286, 290 (2007). The homeowner's policy in question provides that:

COVERAGE L—LIABILITY

State Farm for the policy limits of $100,000 without further proceedings. *See* State Farm's Motion for Summary Judgment, at n. 1.

If a claim is made or a suit is brought against an insured for damages because of *bodily injury* or *property damage* to which this coverage applies, caused by an **occurrence,** we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

Homeowner's policy, at 15 (emphasis in original). An "occurrence" is defined as:

7. "Occurrence," when used in Section II of this policy, [Exclusions] means an accident, including exposure to conditions, which results in:

a. bodily injury; or

b. property damage;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence."

Homeowner's policy, at 2.

The exclusion at issue provides:

Coverage L [liability] and Coverage M [medical payments] do not apply to

· · ·

e. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

· · ·

(2) a motor vehicle owned or operated by or rented or loaned to any **insured,** or

Homeowner's policy, at 16 (emphasis in original). An ATV "owned by an **insured** and designed or used for recreational or utility purposes off public roads," is a "motor vehicle" for purposes of liability coverage under the policy "while off an **insured** location." Homeowner's policy, at 2 (emphasis in original).[3]

The trial court held that the policy provision was not ambiguous on the facts herein and upheld the plain meaning. Administratrix assigns this as error and directs our attention to *Eichelberger v. Warner,* 290 Pa.Super. 269, 434 A.2d 747 (1981), where identical language was held to be ambiguous because it did not define whether it excluded coverage for injuries proximately caused by the motor vehicle or causally connected with the motor vehicle. Since that finding of ambiguity rested upon very different facts, they are pertinent to our analysis.

In *Eichelberger,* the decedent was the driver of a motor vehicle that ceased operating on a highway, presumably due to a lack of gasoline. Decedent and her passenger walked to a gasoline station and, upon their return with fuel, two men stopped to assist the women. All four persons were gathered near the rear of the vehicle, the decedent positioned partially on the highway. Another vehicle approached and was about to pass the decedent's vehicle at the precise moment when the decedent inadvertently stepped to the left into its path. That vehicle struck decedent and, in the aftermath, the men who had stopped to render assistance were also injured. At trial, the jury found both the driver and decedent to be negligent.

At issue on appeal was whether the liability provisions of decedent's vehicle policy and/or her homeowner's policy provided coverage. Under the terms of the auto policy, the insurer agreed to pay on behalf of its insured all damages due to bodily injury or death sustained by any person

---

**3.** If the collision had occurred on the insured premises, the ATV would not have been a motor vehicle within the policy definition, and the exclusion would not have applied. Additionally, the exclusion would not have been triggered if Administratrix's decedent had been operating an ATV or other motor vehicle that was not owned or rented by the insured.

"arising out of the ownership, maintenance, or use of the owned vehicle." *Eichelberger, supra* at 749. We construed the words "arising out of" to mean the broader "causally connected with" and not "proximately caused by," in accordance with the Supreme Court's decision in *Manufacturers Casualty Insurance Co. v. Goodville Mutual Casualty Co.,* 403 Pa. 603, 170 A.2d 571 (1961). We held that "but for" causation, *i.e.,* a cause and result relationship, was enough to satisfy the vehicle policy provision. The decedent's act of unwittingly stepping into the path of an oncoming car while overseeing the refueling of her vehicle was causally connected with ownership, maintenance and use of her vehicle. *See Manufacturers Casualty, supra* (holding a cause and result relationship is enough to satisfy the "arising out of" provision of an automobile insurance policy). Thus, there was coverage under the decedent's automobile insurance policy.

Under the terms of the decedent's homeowner's policy, the insurance company agreed to pay all damages its insured became legally obligated to pay as damages for bodily injury "caused by an occurrence." *Eichelberger, supra* at 750. An occurrence was defined as "an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage." *Id.* However, the policy contained an exclusion for liability for bodily injury "arising out of the ownership, maintenance, operation, use, loading or unloading of . . . any motor vehicle owned or operated by or rented or loaned to any insured." *Id.*

In determining the applicability of the exclusionary clause in the homeowner's policy, the issue was whether the injuries to the decedent arose from the decedent's use of her motor vehicle. We found the policy to be ambiguous because it did not state whether the injury had to be proximately caused by the motor vehicle or simply causally connected with it. We noted that "different canons of construction applied to exclusionary clauses as distinguished from coverage clauses" and relied upon the rule in *Manufacturers Casualty, supra.* We held that "for purposes of an exclusionary clause, when the words 'arising out of' the use of an automobile are read strictly against the insurer, then it must be concluded that this clause acts to exclude only those injuries which are proximately caused by the automobile." *Eichelberger, supra* at 752. When this exclusion was read strictly against the insurer, it did not apply to the decedent's conduct as the injuries were proximately caused by the decedent's movement, not by the use of her vehicle.

■ State Farm contends that there is no ambiguity surrounding the words "caused by" on the facts herein as the motor vehicle was both the proximate cause and the cause in fact of the injury to decedent.[4] The insurer directs our attention to *Wilcha, supra* and *Allstate Property and Cas. Ins. Co. v. Filachek,* 2011 WL 2111219 (E.D.Pa.2011), where identical policy language was held to be unambiguous and enforced on similar facts. In addition, the insurer maintains that in *Wilcha* and *Filachek,* decided decades after *Eichelberger,*[5] it was the cause of the injury, not the

---

4. In *McCabe v. Old Republic Ins. Co.,* 425 Pa. 221, 228 A.2d 901, 903 (1967), the phrase "arising out of" used in a policy exclusion was not ambiguous. *In accord Madison Constr. Co. v. Harleysville Mut. Ins. Co.,* 557 Pa. 595, 735 A.2d 100, 110, (1999) (finding

"arising out of" language in pollution exclusion unambiguous).

5. State Farm contends that in *Eichelberger,* this Court erred in ignoring the policy language referring to the cause of the bodily

conduct of the insured, which determined whether the exclusion applied. According to State Farm, that is why claims based on the insured's conduct, such as negligent entrustment, negligent supervision, and furnishing alcohol to a minor, do not escape the effect of the exclusion.

In *Wilcha,* parents sued the operator of a motor vehicle that collided with the dirt bike operated by their thirteen-year-old son. The driver brought claims of negligent entrustment against the parents. The parents did not dispute that the homeowner's policy excluded coverage for accidents involving a motor vehicle and that their son was using and/or operating a motor vehicle, as that term was defined in the homeowner's policy, when the accident occurred. The issue was whether the claims of negligent entrustment and supervision directed toward the Wilchas triggered a duty to defend on the part of their homeowner's carrier.

We relied upon *Pulleyn v. Cavalier Insurance Corporation,* 351 Pa.Super. 347, 505 A.2d 1016, 1020 (1986) (*en banc*), where we held that the insurer had no duty to defend a negligent entrustment claim against an employer under a casualty policy which contained an exclusion for personal injury arising from maintenance or use of an automobile operated by an employee in the course of his employment. In *Pulleyn,* we reasoned that it was not the negligent entrustment of the vehicle that caused the plaintiff's injuries, but rather the use of the vehicle by the employee that caused the harm.[6]

This distinction was also critical in *Motorists Mutual Insurance Company v. Kulp,* 688 F.Supp. 1033 (E.D.Pa.1988), a decision the *Wilcha* Court found to be persuasive. In that case, a minor sustained injury while riding a mini-bike furnished by his aunt and uncle on adjacent property. His parents asserted claims of negligent supervision and entrustment against the aunt and uncle, and they in turn submitted the claims to their homeowner's carrier. The homeowner's policy contained a motor vehicle exclusion that was virtually identical to the one at issue herein. The insurer filed a declaratory judgment action to determine whether the policy provided coverage for the claims. The district court, citing *Pulleyn, supra,* held that the motor vehicle exclusion applied and precluded coverage as it was the use of the bike that triggered the insureds' alleged liability, not their negligent supervision or entrustment. In *Wilcha,* we called this reasoning "sound" and "consistent with more recent Pennsylvania jurisprudence." *Wilcha, supra* at 1264.

This Court ultimately concluded in *Wilcha* that the homeowner's insurer had no duty to defend the Wilchas on claims for negligent supervision and negligent entrustment. We found no ambiguity in the exclusionary language. Since the minor's injuries arose from use of the dirt bike, the motor vehicle exclusion was applicable.

---

injury, and instead focused on the act that caused liability.

**6.** In *Pulleyn v. Cavalier Insurance Corp.,* 351 Pa.Super. 347, 505 A.2d 1016, 1019–21 (1986) (*en banc*), this Court surveyed the evolving case law regarding the applicability of vehicle use exclusions to negligent entrustment claims. We acknowledged that some state courts hold that such exclusions do not bar coverage when an insured is sued for negligent entrustment. However, Pennsylvania courts have rejected that approach, reasoning that "although the act of negligently entrusting a motor vehicle is an essential (if not the primary) element of the tort [of negligent entrustment], liability giving rise to the tort is not actually triggered until the motor vehicle is used in a negligent manner resulting in injury." *Id.* at 1020.

Administratrix contends that negligent entrustment and supervision claims should be treated differently than the alcohol-related claim herein. She points to *Wilcha*'s discussion of the negligent entrustment tort in *Erie Insurance Exchange v. Transamerica Insurance Company*, 352 Pa.Super. 78, 507 A.2d 389 (1986), and specifically the fact that negligent operation of the entrusted vehicle is an essential element of that tort. She argues that the decedent's operation of the motor vehicle was not essential to Mr. Ross's liability for negligently serving alcohol to a minor. We find the distinction to be of no consequence where the policy language excluded coverage for **injuries** caused by a motor vehicle, not **conduct** arising out of use or maintenance of a motor vehicle.

In *Filachek, supra*, a federal district court applied Pennsylvania law in a declaratory judgment action to determine whether a homeowner's insurer had a duty to defend in a case involving both alcohol-related claims and claims for negligent supervision that were not limited to the use of a motor vehicle. Filachek was a passenger in a vehicle owned and operated by Maher when the vehicle struck and killed Kap. Prior to getting into the vehicle that night, Filachek and Maher spent the evening drinking, and Maher was legally intoxicated. Kap's personal representative commenced an action for wrongful death and survival against Maher, Filachek, and a bar that they had frequented. Liability against Filachek was premised on claims that he provided Maher with alcohol and encouraged Maher to drink to excess and failed to supervise Maher's driving. Allstate, Filachek's homeowner's carrier, retained counsel on his behalf, but also filed a declaratory judgment action seeking a declaration that it was not obligated to defend Filachek because the policy, under two clauses, excluded coverage for injuries arising from the use, or supervision of the use, of a motor vehicle. The first provision excluded coverage for "bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer." *Filachek, supra* at *2. It also contained a vehicle supervision exclusion, which excluded coverage "for bodily injury arising out of an insured's negligent supervision of another or statutorily imposed liability arising from the ownership, maintenance, use ... of any aircraft, vehicle or trailer not covered under that policy." *Id.*

Filachek argued, as Administratrix argues herein, that the terms of the policy were ambiguous. Kap's representative asserted, as Administratrix asserts herein, that the exclusions were inapplicable because Filachek's purported negligence was unrelated to the vehicle and constituted a separate, non-automobile-related cause of injury. The district court rejected both arguments, finding the liability to be "undeniably intertwined with Maher's use of the vehicle that actually gave rise to the injury." *Id.* at *4. The court continued that the vehicle "was the instrumentality of the injury and the death 'arose out of the use' of a motor vehicle." *Id.* The court relied upon *Wilcha* for the proposition that "any liability-inducing conduct which occurred before such use cannot be divorced from the negligent driving that led to the fatal car accident." *Id.; Wilcha, supra* at 1263 n. 3.

The *Filachek* court continued that, "the vehicle use exclusion is not directed at those liability-inducing **actions** which relate to the ownership, maintenance, use, or occupancy of a motor vehicle. Instead, the exclusion bars coverage for all 'bodily injury or property damage' which arises out of 'the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer.' "

*Filachek, supra* at *4 (emphasis in original). The focus was on the cause of the injury, not on the conduct of the insured.

Administratrix attempts to distinguish *Filachek* as involving claims that a passenger "negligently plied the driver with alcohol and then negligently supervised the intoxicated driver's operation of the vehicle[.]" Appellant's supplemental brief at 8. She avers further that, as in *Wilcha,* the vehicle was an essential element of the insured's liability. *Id.* Administratrix simply ignores the express language of the exclusion that focuses on whether the motor vehicle was the cause of the injury, not whether the insured's conduct giving rise to liability arose out of use of a motor vehicle. The fact that the serving of alcohol to a minor subjected Mr. Ross to liability even without the involvement of a motor vehicle does not change the fact that the policy language excludes coverage for injuries arising out of use of a motor vehicle. It is undisputed that the decedent's use of the ATV was both the proximate cause and the cause in fact of his injury. We find no ambiguity in the exclusionary language on the facts herein.

■ In her second issue, Administratrix argues that the motor vehicle exclusion is inapplicable for two reasons. She contends first that the exclusion applies only where tortious use of the motor vehicle resulted in harm to someone other than the operator of the vehicle. A variation of this argument was advanced and rejected in *Wilcha, i.e.,* that the exclusion was limited to injuries that arose from the insured's use of a motor vehicle, and provided coverage for injury or damage arising out of another's use of insured's vehicle. We reject the argument herein as the exclusion expressly applies to bodily injury arising out of the use of any motor vehicle either owned by an insured **or** operated by an insured. We would have to disregard the clear policy language, specifically the use of the disjunctive, in order to credit Administratrix's proposed construction.

■ Administratrix also contends that the exclusion does not apply where, as here, her claims against Mr. Ross are premised solely on the fact that he provided alcohol to decedent. It was Mr. Ross's non-vehicle related conduct, according to Administratrix, that was the proximate cause of the accident, and the liability provision of the homeowner's policy is concerned only with the conduct of the insured, not with the conduct of the decedent. The operation of the dirt bike was "only a fortuitous circumstance under which the injury occurred." Appellant's brief at 14. State Farm counters that the furnishing of alcohol to the minor decedent was the type of liability-inducing conduct that preceded the use of the motor vehicle, which the *Wilcha* Court held could not be separated from the negligent driving that culminated in the accident. *Wilcha, supra* at 1263 n. 3.

In support of her position, Administratrix urges us to consider the reasoning of *Salem Group v. Oliver,* 128 N.J. 1, 607 A.2d 138 (1992), affirming 248 N.J.Super. 265, 590 A.2d 1194 (App.Div.1990), a case virtually identical on its facts. Therein, an uncle furnished alcohol to his nephew, a minor, while he was riding the uncle's ATV. There was an accident and the nephew was injured. At issue was whether the uncle's homeowner's insurance company had a duty to defend a claim based on his furnishing of alcohol to his nephew. After recognizing that insurers are generally obligated to defend their insureds on social host claims, the court framed the question as whether the insurer can avoid that obligation simply because a separate excluded risk, the operation of an all-terrain vehicle (ATV), constituted an additional cause of the injury. It distinguished negligent en-

trustment or supervision cases, finding that those claims, in contrast to social host liability claims, could not be isolated from the ownership and operation of the insured automobile.

The *Salem* Court held that the insurer had a duty to defend the social host count as it provided an additional basis for liability independent of the insured's ownership or use of the ATV. It reasoned that one need not own a motor vehicle in order to serve alcohol to another who, in that case, was a minor. It viewed the service of alcohol and the ATV as concurrent causes of the accident for purposes of determining whether the insurer had a duty to defend. The court expressly declined, however, to go as far as the California Supreme Court did in *Partridge, supra* at 129, and adopt a rule in the context of a homeowner's policy that an insurer was required to both defend and indemnify for "concurrent proximate causes ... so long as one of the causes is covered by the policy." The New Jersey Supreme Court qualified in *Salem,* "[w]e hold not that the insurer may ultimately be liable under the policy, but only that it must honor its duty to defend." *Salem, supra* at 140 (N.J.1992).

■ Preliminarily, we reject Administratrix's contention that the nature of the negligence claim pled, premised solely on social host liability, is determinative of coverage or the applicability of the exclusion. In determining whether there is a duty to indemnify, unlike the duty to defend, we are not limited to the claims pled. *State*

*Farm Fire & Cas. Co. v. DeCoster,* 67 A.3d 40, 46 (Pa.Super.2013); *see also Mutual Benefit Ins. Co. v. Haver,* 555 Pa. 534, 725 A.2d 743, 745 (1999) (dismissing notion that complaint's negligence claims were conclusive of whether an exclusion for "knowing endangerment" was implicated, and holding it was necessary to look at the factual allegations contained in the complaint). Thus, for purposes of coverage, it matters not that the only causal negligence asserted against Mr. Ross was his furnishing of alcohol to Kevin.

■ Furthermore, Administratrix's reliance upon *Salem* is misplaced. The *Salem* Court limited its concurrent causation approach to the duty to defend and expressly declined to extend that theory to coverage, which is the issue before us. *See Flomerfelt v. Cardiello,* 202 N.J. 432, 997 A.2d 991, 1000–1001 (2010) (noting that *Salem* majority limited its holding to an insurer's duty to defend only, not a duty to indemnify under a concurrent causation theory). Moreover, with regard to the duty to defend, *Salem* is consistent with current Pennsylvania jurisprudence. As we noted in *Penn–America Ins. Co. v. Peccadillos, Inc., supra,* in ascertaining whether there is a duty to defend, it is the nature of the claim that is determinative. Thus, the obligation to defend is determined by reference to the allegations in the complaint. *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.,* 606 Pa. 584, 2 A.3d 526, 541 (2010).[7]

---

7. In *Penn–America,* this Court held that allegations that a bar ejected from its premises a patron so inebriated as to render him a danger behind the wheel of a car, when liberally construed in favor of the insured, stated a claim subject to coverage under that establishment's commercial general liability policy. *Id.* We recognized that,

> The duty to defend is a distinct obligation, separate and apart from the insurer's duty

to provide coverage. Moreover, the insurer agrees to defend the insured against any suit arising under the policy even if such suit is groundless, false, or fraudulent. Since the insurer agrees to relieve the insured of the burden of defending even those suits which have no basis in fact, the obligation to defend arises whenever the complaint filed by the injured party may potentially come within the coverage of the

■ In a final attempt to escape the exclusion, Administratrix urges this Court to adopt and apply the independent concurrent cause approach to indemnity espoused in *Partridge, supra,* and discussed in *Salem.* We decline to do so for several reasons, not the least of which is that, were we to do so, it likely would not achieve the result Administratrix seeks in the instant case.

In *Partridge,* the issue before the court was whether the insured was covered under his homeowner's policy, his automobile policy, or both, when his negligent acts, one automobile-related and the other unrelated to a motor vehicle, were concurrent causes of an accident. The insured enjoyed hunting and owned a .357 Magnum pistol. Prior to the accident, he filed the trigger mechanism of the pistol to lighten the trigger pull, creating a hair-trigger. On the day of the accident, the insured, accompanied by two of his friends, was driving in the countryside in the insured's vehicle. He and one of his passengers were shooting jackrabbits from the windows of the moving vehicle and the insured was using his modified .357 Magnum for that purpose. At one point, the insured drove his vehicle off the paved road to keep a jackrabbit within the car's headlights. The vehicle hit a bump, and the pistol, which was either on the insured's lap or resting on top of the steering wheel,

discharged. The bullet struck the second passenger in the left arm and penetrated · her spinal cord, resulting in paralysis.

The court interpreted the automobile policy broadly to afford coverage. It relied on authority finding it was enough that the insured vehicle bore "some, albeit slight, causal connection with the shooting incident." *Id.* at 100, 109 Cal.Rptr. 811, 514 P.2d 123. The homeowner's policy contained an exclusion for "bodily injury ... arising out of the ... use of ... any motor vehicle[.]" The trial court found that the insured had been negligent both in modifying the gun by filing its trigger mechanism and in driving his vehicle off the paved road onto the rough terrain. It reasoned that these two negligent acts committed by the insured were independent, concurrent proximate causes of the passenger's injuries, one of which was non-vehicle related and the other related to use of a motor vehicle. Since the insured's negligent modification of the gun sufficed, in itself, to render the insured fully liable for the resulting injuries, and liability existed independently of the insured's use of his car, the court found coverage under the homeowner's policy.

While Administratrix assumes she would escape the exclusion that bars coverage herein if we adopted concurrent causation, *Partridge's* progeny suggest otherwise. As illustrated in *Farmers Ins. Exchange v.*

policy. *American and Foreign Ins. Co. v. Jerry's Sport Center, Inc. (Jerry's Sport Center I),* 2008 PA Super 94, 948 A.2d 834, 845–846 (Pa.Super.2008) (quoting *Wilcha v. Nationwide Mut. Fire Ins. Co.,* 2005 PA Super 395, 887 A.2d 1254, 1258 (Pa.Super.2005) (emphasis added)).

*Penn–America Ins. Co. v. Peccadillos, Inc.,* 27 A.3d 259, 265 (Pa.Super.2011) (*en banc*). The duty to defend remains until the insurer "clearly defeats every cause of action averred in the underlying complaint."

In *Penn–America,* the liquor liability exclusion, which excluded liability based on the

bar having "caused or contributed to the intoxication" of the patron, did not limit liability that could be assessed for other reasons, such as ejecting inebriated patrons who then got behind the wheel of a car. *See also Donegal Mut. Ins. Co. v. Baumhammers* [595 Pa. 147], 938 A.2d 286 (Pa.2007) (under intentional act exclusion, fact that injuries were caused by intentional conduct of an insured did not absolve insurer of duty to defend other insureds whose allegedly negligent conduct enabled that conduct).

*Superior Court,* 220 Cal.App.4th 1199, 163 Cal.Rptr.3d 609 (2013), the concurrent causation approach does not *ipso facto* serve to avoid the motor vehicle exclusion in a homeowner's policy. In *Farmers,* a toddler exited her grandparents' home without her grandmother's knowledge to greet grandfather. He unknowingly drove over the child in the driveway. A vehicle negligence claim was asserted against grandfather; a negligent supervision claim was lodged against grandmother. The trial court held that the motor vehicle exclusion barred coverage under the grandparents' homeowner's policy for the death of the two-year-old child.

On appeal, the California Superior Court framed the issue as whether the two causes were dependent or independent concurrent proximate causes of the child's fatal injuries. The court surveyed California cases involving such exclusions and observed the following. In *Partridge, supra, State Farm Fire & Cas. Co. v. Kohl,* 131 Cal.App.3d 1031, 182 Cal.Rptr. 720 (1982), and *Ohio Casualty Ins. Co. v. Hartford Accident & Indemnity Co.,* 148 Cal. App.3d 641, 196 Cal.Rptr. 164 (1983), and similar cases, where "the excluded instrumentality did not play an active role in causing the injury," courts generally found that the motor vehicle or other relevant exclusion did not apply. (quoting *Ohio Casualty, supra* at 646, 196 Cal.Rptr. 164); *see also, e.g., Safeco Ins. Co. of America v. Parks,* 170 Cal.App.4th 992, 998, 88 Cal. Rptr.3d 730 (2009). The court distinguished cases such as *National American Ins. Co. v. Coburn,* 209 Cal.App.3d 914, 257 Cal.Rptr. 591 (1989) (motor vehicle rolled over victim) and *Prince v. United Nat. Ins. Co.,* 142 Cal.App.4th 233, 47 Cal. Rptr.3d 727 (2006) (motor vehicle heated up on a hot day), where the motor vehicle played an active role in causing the injury and was the only instrumentality of injury. In such cases, the court observed that the motor vehicle or relevant exclusion applied to bar coverage. *See, e.g., Belmonte v. Employers Ins. Co.,* 83 Cal.App.4th 430, 434, 99 Cal.Rptr.2d 661 (2000) (vehicle exclusion precluded coverage where van negligently driven by insured's niece hit and injured the victim, even though insured was allegedly negligent in allowing his niece to obtain the key); *Gurrola v. Great Southwest Ins. Co.,* 17 Cal.App.4th 65, 21 Cal.Rptr.2d 749 (1993) (vehicle exclusion precluded coverage under comprehensive general liability policy where insured's negligently driven rebuilt Bantam Coupe killed passenger in collision, even though the insured was allegedly negligent in welding the vehicle). The *Farmers* Court relied on the latter line of authority and affirmed the trial court's holding that the exclusion barred coverage on the facts before it.

There is no dispute herein that the motor vehicle played an active role in and was the instrumentality of the decedent's fatal injuries. The parties stipulated that "[t]he plaintiff's decedent, while operating a motor vehicle, struck a fixed object off the insured location, and suffered fatal injuries in the collision." *See* Stipulation, ¶ 3. Thus, even if we were to adopt the independent concurrent causation approach first espoused in *Partridge,* and apply it consistently with subsequent California case law as it has been construed, the exclusion would still bar coverage on the facts herein.

We acknowledge that a number of other jurisdictions have employed an independent concurrent causation approach to coverage determinations. However, a closer reading of those cases reveals nuances in its application from state to state. For instance, as State Farm notes, some of those jurisdictions have held that a concurrent proximate cause only escapes an exclusion if it is truly separate and distinct

from the excluded cause. *See Allstate Insurance Company v. Blount*, 491 F.3d 903, 911 (8th Cir.2007) (Missouri courts determine whether there are concurrent proximate causes of an injury by determining whether each cause could have independently brought about the injury); *accord Gateway Hotel Holdings, Inc. v. Lexington Ins. Co.*, 275 S.W.3d 268, 282 (Mo.Ct. App.2008); *see also United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App.3d 45, 716 N.E.2d 1201, 1205 (1998) (holding that "when a loss for which an insured seeks coverage results from two or more causes, at least one of which is covered under the insurance policy and at least one of which is excluded, coverage will extend to the loss provided that the cause of loss covered under the policy is independent of the excluded cause of loss," *i.e.*, "when the covered cause of loss (1) provides a basis for a cause of action in and of itself and (2) does not require the occurrence of the excluded risk to make it actionable."). Under the aforementioned tests, the exclusion would bar coverage on the facts herein.

In conclusion, we do not find the exclusion to be ambiguous on the facts herein. Even interpreting the "injuries arising out of" language narrowly "as proximately caused by," it is undisputed that the instrumentality of Kevin Wolfe's death was the ATV. Additionally, we find the exclusion applicable on the instant facts. Finally, we decline to jettison our jurisprudence in favor of *Partridge* or any variation of its concurrent causation approach. In this Commonwealth, we generally permit insurers to contractually limit their liability and to impose conditions on their obligations so long as the limitations and conditions are not in contravention of a statute or public policy. Administratrix has not alleged that the exclusion is violative of any statute or public policy. Moreover, with regard to public policy, the rationale for excluding coverage for injuries arising out of operation or use of an **insured's** vehicle, or an **insured's** use of another vehicle in a homeowner's policy is obvious: the homeowner's carrier is seeking to avoid liability for the losses that attend the higher risks associated with motor vehicles operated on public roads and which are traditionally covered by the insured's motor vehicle policy.[8]

For all of the foregoing reasons, we find that the motor vehicle exclusion in the instant case operates to exclude homeowner's coverage for the tragic death of Administratrix's decedent.

Order affirmed.

FORD ELLIOTT, P.J.E., BENDER, P.J.E., SHOGAN, ALLEN, OTT, STABILE, and JENKINS, JJ., join the Opinion.

WECHT, J., files a dissenting opinion.

DISSENTING OPINION BY WECHT, J.:

I have the utmost respect for the learned Majority's careful review and application of this Court's three-judge-panel decision in *Wilcha v. Nationwide Mutual Fire Insurance Co.*, 887 A.2d 1254 (Pa.Super.2005). However, after careful consideration, I am unable to join the Majority's analysis or conclusion.

I would find that *Wilcha* is distinguishable from the instant matter. This case's

---

**8.** In recognizing the motivation for the exclusion, we are not suggesting that homeowner's insurance and automobile coverages are mutually exclusive. We expressly rejected that position in *Pulleyn v. Cavalier Insurance Corp.*, 351 Pa.Super. 347, 505 A.2d 1016, 1019–21 (1986) (*en banc* ) and *Eichelberger v. Warner*, 290 Pa.Super. 269, 434 A.2d 747 (1981), in favor of examining each policy on its own terms.

resolution instead should follow our decision in *Eichelberger v. Warner*, 290 Pa.Super. 269, 434 A.2d 747, 750–51 (1981), and the principles and authorities we relied upon therein.

Today's Majority expands *Wilcha's* application to new circumstances; circumstances that, in my view, warrant a different result. In so doing, the Majority calls into question this Court's more deeply-rooted precedent embodied by *Eichelberger*. I do not share the Majority's skepticism regarding our reasoning in *Eichelberger*. It is possible to harmonize Pennsylvania's prior cases concerning vehicle exclusion clauses in homeowner's insurance policies more effectively than does the Majority. Were my views to prevail, we would preserve more fully Pennsylvania's enduring commitment to construe ambiguous insurance policy provisions in favor of coverage for the insured. Thus, I respectfully dissent.

The fact pattern and procedural history in this case are straightforward. Theresa Wolfe alleged in the underlying action that, as a direct and proximate result of Robert Ross's provision of alcohol to Wolfe's son ("Decedent"), Decedent departed on a dirt bike owned by Ross's son, lost control of the bike, and struck a fixed object, suffering fatal injuries. *See* Maj. Op. at 882–83.[1] Before trial, Wolfe and Ross entered into a consent judgment for $200,000, pursuant to which Ross assigned to Wolfe his rights under a homeowner's policy issued by State Farm, which had denied any duty to defend or indemnify under the policy's motor vehicle exclusion. *Id.* at 883. Thereafter, State Farm waived its right to litigate whether the insured

furnished alcohol and whether the alcohol was a legal cause of Decedent's harm; State Farm stipulated that it would remit the policy limits of $100,000 if the court found as a matter of law that it was obligated to provide coverage for Wolfe's claims.

I need not restate in detail the relevant motor vehicle exclusion at issue in this appeal, except to note that, as in most of the cases discussed below, the crux of the matter lies in the meaning of the phrase "arising out of the ownership, maintenance, use, loading or unloading of … a motor vehicle owned or operated by or rented or loaned to any insured." *See id.* at 884–85 (reproducing the relevant policy provisions in full).[2] Accordingly, I turn directly to my reasons for departing from the learned Majority's analysis.

In *Wilcha*, the case that, for the parties and the Majority, is the elephant in the room, a driver brought negligent entrustment claims against the parents of a child with whom the driver collided while the child was operating a motor bike. Faced with a motor vehicle exclusion in their homeowner's policy akin to the exclusion in this case, the parents maintained nonetheless that claims of negligent entrustment and negligent supervision existed independently of the child's use of the motor bike such that the insurer had a duty to defend against the claims.

The Majority's discussion of *Wilcha* warrants reproduction:

> [This Court in *Wilcha*] relied upon *Pulleyn v. Cavalier Insurance Corp.* [351 Pa.Super. 347], 505 A.2d 1016, 1020

---

1. The Majority aptly notes that "[a]ll allegations against [Ross] sounded in negligence and arose from the furnishing of alcohol to the minor." Maj. Op. at 883.

2. Unless otherwise noted, the reader may assume that all motor vehicle exclusions addressed in this dissent are, for all relevant purposes, identical in language and scope to the motor vehicle exclusion at issue in this case.

(Pa.Super.1986) (*en banc*), where we held that the insurer had no duty to defend a negligent entrustment claim against an employer under a casualty policy [that] contained an exclusion for personal injury arising from maintenance or use of an automobile operated by an employee in the course of his employment. In *Pulleyn*, we reasoned that it was not the negligent entrustment of the vehicle that caused the plaintiff's injuries, but rather the use of the vehicle by the employee that caused the harm.

This distinction was also critical in *Motorists Mutual Insurance Co. v. Kulp*, 688 F.Supp. 1033 (E.D.Pa.1988), a decision the *Wilcha* Court found to be persuasive. In that case, a minor sustained injury while riding a mini-bike furnished by his aunt and uncle on [an] adjacent property. His parents asserted claims of negligent supervision and entrustment against the aunt and uncle, and they in turn submitted the claims to their homeowner's carrier. The homeowner's policy contained a motor vehicle exclusion that was virtually identical to the one at issue herein. The insurer filed a declaratory judgment action to determine whether the policy provided coverage for the claims. The district court, citing *Pulleyn*, *supra*, held that the motor vehicle exclusion applied and precluded coverage as it was the use of the bike that triggered the insureds' alleged liability, not their negligent supervision or entrustment. In *Wilcha*, we

called this reasoning "sound" and "consistent with more recent Pennsylvania jurisprudence." *Wilcha*, 887 A.2d at 1264.

This Court ultimately concluded in *Wilcha* that the homeowner's insurer had no duty to defend the Wilchas on claims for negligent supervision and negligent entrustment. We found no ambiguity in the exclusionary language. Since the minor's injuries arose from use of the dirt bike, the motor vehicle exclusion was applicable.

Maj. Op. at 887 (citations modified).

The Majority next discusses at length an unpublished federal opinion in *Allstate Property and Casualty Co. v. Filachek*, Civ. No. 10–3634, 2011 WL 2111219 (E.D.Pa. May 25, 2011) (unpublished). *See* Maj. Op. at 888–89. In that case, which, like *Kulp*, has no more than persuasive value for this Court,[3] the defendant insured, Filachek, spent an evening drinking with his friend Maher, also a named defendant, at several bars. At the last bar they visited, the two men remained until closing. While there, Maher "pounded shots of liquor" in Filachek's presence. *Filachek*, 2011 WL 2111219, at *1. When the bar closed, Filachek and Maher decided to drive to Atlantic City, with Maher behind the wheel and Filachek in the passenger's seat. Maher, legally drunk by a considerable margin, eventually collided with a car driven by Kap when Maher was traveling

---

**3.** This principle applies regardless of whether the case was published. *See generally Pantelis v. Erie Ins. Exch.*, 890 A.2d 1063, 1066 n. 3 (Pa.Super.2006); *Roman Mosaic & Tile Co. v. Aetna Cas. & Sur. Co.*, 704 A.2d 665, 670 & n. 3 (Pa.Super.1997) (adopting the reasoning of the Western District of Arkansas district court's published opinion and rejecting the appellants' reliance upon contrary unpublished decisions of a the Eastern District of

Pennsylvania district court). However, that the federal district court declined to publish its decision arguably reduces that decision's value still further. *Cf. Ray v. Dep't of Corrs.*, No. 453 M.D. 2007, 2008 WL 9405086, at *2 n. 4 (Pa.Cmwlth.2008) (unpublished) (rejecting petitioner's reliance upon unpublished federal decisions, noting that the Commonwealth Court may not even cite its own unpublished decisions).

at over 100 miles per hour. Kap was killed. *Id.* at *1.

The plaintiff survivor brought suit against the above-named defendants. She alleged that Filachek was liable, *inter alia,* because he provided alcohol to Maher and encouraged him to drink excessively, did not investigate Maher's fitness to drive, failed to obtain alternative transportation, failed to ensure that Maher operated the vehicle safely, and failed to take over driving when it became clear that Maher was not able to operate the vehicle safely. *Id.*

Filachek's insurer assumed his defense under a homeowner's policy, but filed a declaratory judgment action contesting its duty to defend on the basis of the policy's motor vehicle exclusion. Notably, the insurer also relied upon a separate policy provision that excluded coverage for "the negligent supervision by any insured person of any person." *Id.* at *2 (quoting the policy).

Citing a non-precedential Third Circuit decision and this Court's decision in *Pulleyn,* the district court found that both exclusions unambiguously applied to bar coverage. *Id.* at *3 (citing *Countryway Ins. Co. v. Slaugenhoup,* 360 Fed.Appx. 348 (3d Cir.2010)). Thus, if Filachek was liable, "such liability [was] undeniably intertwined with Maher's use of the vehicle that actually gave rise to the injury. **The vehicle Maher drove was both the instrumentality of the injury and a necessary element in [the plaintiff's] theories of liability against both men.**" *Id.* at *4 (emphasis added). Consequently, as in *Wilcha,* the underlying liability claim was defined by reference to the stewardship of the driver in relation to the vehicle's use. Put simply, what was at issue was not Filachek's supervision of Maher's drinking, as such, but rather his responsibilities as defined by encouraging or permitting Maher to drive while intoxicated.[4]

In *Eichelberger,* which I find in principle more on point with the instant case despite its divergent fact pattern, Herby Eichelberger, one of several parties injured in a car accident, sued Vivian Warner and the administrator of the estate of Dava Rice, Warner and Rice being the two drivers involved in the accident. The jury found in favor of Eichelberger against both defendants. Warner settled the verdict with Eichelberger in return for an assignment of judgment. Then, Warner filed a praecipe for a writ of execution against Rice's homeowner's and auto insurance policies, issued respectively by Valley Mutual and Federal Kemper. The trial court granted summary judgment in favor of Warner and against Valley Mutual and Federal Kemper. At issue in the subsequent cross-appeals to this Court was whether either or both policies were obligated to cover Rice. *See* 434 A.2d at 748.

The facts in *Eichelberger* were as follows: Rice was driving her car, with her sister in the passenger seat, when the car stopped running. Rice parked the car as close to the guard rail as possible, but could not remove the car entirely from the lane of travel. Rice and her sister then traveled on foot to obtain gasoline, in hopes that the car merely had run out of fuel. When they returned with the gas, two good Samaritans, including Herby Eichelberger, stopped to assist. While the Samaritans prepared to fuel the vehicle, Rice was standing "slightly on the highway behind her vehicle with her back to oncoming ... traffic." *Id.* at 749. Just then,

---

**4.** Notably, in *Filachek,* rather than rely exclusively upon the policy's motor vehicle exclusion, the district court ruled in the alternative that coverage was precluded by the policy provision excluding coverage for "negligent supervision," which has no analog in the instant case.

Warner was approaching in the partially obstructed lane. As Warner neared the disabled vehicle, Rice stepped backward into Warner's path. Warner struck Rice, lost control of her car, and ran into the rear of Rice's vehicle, killing Rice and injuring both Samaritans. A jury found that Warner and Rice both had been negligent. *Id.* at 748–49.

Because our Supreme Court previously had held in *Morris v. American Liability and Surety Co.*, 322 Pa. 91, 185 A. 201 (1936), that " 'maintenance' as used in the context of an automobile insurance policy includes all acts [that] come within the ordinary scope and meaning of the word," we found it "inescapable that the replacement of fuel [that] has been exhausted with use[,] and without which a motor vehicle is inoperative, is a species of maintenance." *Eichelberger*, 434 A.2d at 750 (quoting *State Farm Mut. Ins. Co. v. Pan Am. Ins. Co.*, 437 S.W.2d 542, 545 (Tex. 1969)). Notwithstanding that `Rice had been deemed negligent in stepping into Warner's path, we found that Rice's auto insurance policy was obligated to provide coverage because "a cause and result relationship is enough to satisfy the 'arising out of' provision of an automobile insurance policy." *Id.* Rice's negligent act was not "so remote from the ownership, maintenance or use of her vehicle as to be unconnected with them." *Id.*

Turning to Rice's homeowner's policy, we noted that, as in the case *sub judice*, it excluded coverage for "bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of ... any motor vehicle owned or operated by or rented or loaned to any insured." *Id.* Our explanation as to why this deployment of materially identical language—*i.e.*, "arising out of"—led to different results *vis-à-vis* the auto and insurance policies is instructive:

[C]overage clauses are interpreted broadly so as to afford the greatest possible protection to the insured. *Mohn v. Am. Cas. Co. of Reading* [458 Pa. 576], 326 A.2d 346 (Pa.1974); *Penn–Air, Inc. v. Indem. Ins. Co. of N. Am.* [439 Pa. 511], 269 A.2d 19 (Pa.1970); *Miller v. Prudential Ins. Co. of Am.* [239 Pa.Super. 467], 362 A.2d 1017 (Pa.Super.1976) (*en banc*); *Celley v. Mut. Benefit Health & Accident Ass'n* [229 Pa.Super. 475], 324 A.2d 430 (Pa.Super.1974) (*en banc*). These rules of construction are necessary because, as this [C]ourt has noted, insurance policies are in essence contracts of adhesion. *Ranieli v. Mut. Life Ins. Co. of Am.* [271 Pa.Super. 261], 413 A.2d 396 (Pa.Super.1979).[5] Because of these canons of construction, it must be emphasized that a homeowner's policy and an automobile policy are not necessarily mutually exclusive. *See State Farm Mut. Auto. Ins. Co. v. Partridge* [10 Cal.3d 94, 109 Cal.Rptr. 811], 514 P.2d 123 (Cal.1973) (even though inclusionary clause of homeowner's policies and exclusionary clause of automobile insurance policies held by the insured had both been issued by the same insurer and contained nearly identical language, such policies were held not to be mutually exclusive)[.] As one treatise states:

(S)ome courts and writers have confused further the problem of the use of the automobile with the exclusionary clauses of the homeowner personal comprehensive liability and general liability policies. They have focused attention on the exclusions rather

---

**5.** *See also Adamitis v. Erie Ins. Exch.*, 54 A.3d 371, 380 (Pa.Super.2012) (noting that ambiguous provisions should be interpreted in favor of the insured because "the insurer drafts the policy[ ] and controls coverage").

than on the insuring agreements. The insuring agreements of the policies are not the same. The automobile policy agrees to pay all damages ' * * * arising out of the * * * use of the automobile' whereas the general liability policy agrees to pay all damages ' * * * arising out of an occurrence[.'] The exclusion of the general liability policy seems to suggest that if the loss arises out of the 'use' of an automobile away from the premises it is excluded. However, such a view ignores the insuring agreement on the different policies, and the fact that one focuses on an occurrence and the other on the automobile. And they are not mutually exclusive. The court has a legitimate interest in determining whether the use of the automobile was the 'occurrence' [that] produced the liability. **Clearly, if the 'use' of the automobile was only incidental to the event that produced liability it should not be an excluded event under homeowner or general liability policies.** And, as a California court has stated, the courts will give broad construction to the coverage provisions but strict construction to the exclusions. Thus, there are cases that provide coverage under the homeowner's policy in the absence of a causal connection between the use of the vehicle and the accident.

The exclusions of the general liability and homeowner policies and the insuring agreement of the automobile policy are not mutually exclusive and recovery can be had under both polices.

[7A Appleman, Ins. Law & Practice, § 4500 (1979) ]

*Eichelberger*, 434 A.2d at 751–52 (citations modified; footnote omitted; emphasis added).

We then turned to examine the California Supreme Court's decision in *Partridge*, *supra:*

In *Partridge*, the Supreme Court of California was asked to construe the same language as that which is now before our Court, *i.e.*, "arising out of the use" of an automobile. As in the case *sub judice*, this language in *Partridge* was contained in both the inclusionary clause of an automobile policy held by the insured and in the exclusionary language of the homeowner's policy. The *Partridge* court said:

In view of the (different canons of construction) the fact that an accident has been found to 'arise out of the use' of a vehicle for purposes of an automobile policy is not necessarily determinative of the question of whether that same accident falls within the similarly worded exclusionary clause of a homeowner's policy. (citations omitted)

*Partridge* [109 Cal.Rptr. 811], 514 P.2d at 128.

In *Partridge*, the [c]ourt was faced with a situation where the insured had committed two negligent acts [that] jointly caused the accident. The insured in *Partridge* had modified a gun by filing the trigger so that it had a "hair" trigger. The insured took this gun with him in his vehicle when he went to hunt jackrabbits. At the time of the accident, the insured intentionally drove his vehicle off the paved road and onto ... bumpy terrain. The gun accidentally discharged, injuring the passenger. The issue in *Partridge* was whether the insured's homeowner's policy, in addition to the insured's automobile policy, covered this accident. We recognize that the *Partridge* case is factually different from the instant case and that the court did find that both policies covered the

accident for the reason that there were two joint causes to the accident[,] one auto-related and one non-auto[-]related. Nonetheless, it should be noted that the *Partridge* Court said that "liability under the homeowner's policy could possibly be predicated upon the ambiguity of the exclusionary clause in the context of the instant accident...." *Id.*, [109 Cal. Rptr. 811, 514 P.2d] at 129. Such an ambiguity exists under the facts of the present case. The exclusionary clause, although it says that the policy does not apply to bodily injury "arising out of" the ownership, etc., of any motor vehicle, does not state whether such injury must be proximately caused by the auto or simply causally connected with the auto.... [W]e hold that for purposes of an exclusionary clause, when the words "arising out of" the use of an automobile are read strictly against the insurer, then it must be concluded that this clause acts to exclude only those injuries [that] are proximately caused by the automobile. This interpretation is consistent with the general rule that insurance policies are read to effect the policy's dominant purpose of indemnity or payment to the insured.

*Eichelberger*, 434 A.2d at 751–52 (citations modified).

Nor is this the only aspect of *Partridge*, which this Court in *Eichelberger* clearly endorsed and adopted in part, that warrants consideration. In *Partridge*, "State Farm contended that because the use of the car played some causal role in the accident in question, the injuries 'arose out of the use of the car' within the meaning of the homeowner's exclusionary provision." *Id.*, [109 Cal.Rptr. 811] 514 P.2d at 126. The *Partridge* court rejected that argument:

Here the "use" of Partridge's car was not the sole cause of Vanida's injuries

but was only one of two joint causes of the accident. Thus, even if we assume that the connection of the car with the accident is the type of non-ambiguous causal relationship [that] would normally bring the exclusionary clause into play, **the crucial question presented is whether a liability insurance policy provides coverage for an accident caused jointly by an insured risk (the negligent filing of the trigger mechanism) and by an excluded risk (the negligent driving). Defendants correctly contend that when two such risks constitute concurrent proximate causes of an accident, the insurer is liable so long as one of the causes is covered by the policy.**

\* . \* \*

In the instant case, ... **although the accident occurred in a vehicle, the insured's negligent modification of the gun suffices, in itself, to render him fully liable for the resulting injuries.** Under these facts the damages to Vanida are, under the language of the homeowner's coverage clause, "sums [that] the Insured ... [became] legally obligated to pay" because of the negligent filing of the trigger mechanism; inasmuch as the liability of the insured arises from his non-auto-related conduct, and exists independently of any "use" of his car, we believe the homeowner's policy covers that liability.

*Id.*, 109 Cal.Rptr. 811, 514 P.2d at 129 (emphasis added).

Heavily relying upon the reasoning set forth in *Partridge*, and in light of the ambiguity we found in the vehicle exclusion, in *Eichelberger*, we found that coverage would lie. Although the use of the vehicle was a factual or "but-for" cause of the accident, the exclusion did not in unambiguous terms bar coverage when an "occurrence" that, standing alone, would incur coverage played a proximately causal

role in the harm upon which the suit was based.[6] *Cf. Penn–Am. Ins. Co. v. Peccadillos, Inc.*, 27 A.3d 259, 265 (Pa.Super.2011) (*en banc*) (holding that provision of alcohol exclusion did not preclude the duty to defend where, among alcohol-related allegations that clearly were excluded, the plaintiff also stated a claim for improperly ejecting intoxicated patron when bar staff knew or should have known that the plaintiff would attempt to drive).

It is worth noting that Pennsylvania courts long have recognized "concurrent causation" in the context of joint and several liability, holding that "multiple substantial factors may cooperate to produce an injury." *Harsh v. Petroll*, 584 Pa. 606, 887 A.2d 209, 218 (2005). Moreover, *Partridge's* concurrent causation approach has been adopted in some form by a considerable number of our sister states.[7]

**6.** At least one court has read *Eichelberger* as I do. *See Kalell v. Mut. Fire & Auto. Ins. Co.*, 471 N.W.2d 865, 867–69 (Iowa 1991) (reviewing *Eichelberger* at length and finding that coverage would lie for damages arising from pulling a tree limb down by attaching it to a motor vehicle, because the removal of a tree limb was "an independent act of negligence and one [that] is covered by the policy," holding that, "when two independent acts of negligence are alleged, one vehicle-related and one not vehicle-related, coverage is still provided under the homeowner['s] policy unless the vehicle-related negligence is the sole proximate cause of the injury").

**7.** *See Scottsdale Ins. Co. v. Nguyen*, 158 Ariz. 476, 763 P.2d 540 (Ct.App.1988) (finding coverage where house-moving company employee was electrocuted when, during moving of house, it came into contact with power line spanning street); *U.S. Fid. & Guar. Co. v. State Farm Mut. Auto. Ins. Co.*, 107 Ill.App.3d 190, 63 Ill.Dec. 14, 437 N.E.2d 663 (1982) (finding coverage where child was expelled from vehicle operated by day care because other acts of negligence were asserted against day care); *Kalell v. Mut. Fire & Auto. Ins. Co.*, 471 N.W.2d 865 (Iowa 1991) (finding that coverage may lie where injury arose from using pick-up truck to pull down tree limb); *LeJeune v. Allstate Ins. Co.*, 365 So.2d 471, 479 (La.1978) (finding coverage where sheriff driving with funeral cortege failed to secure intersection because "the decisions [the court] could find hold that, where the automobile use exclusion clause is sought to be applied so as to avoid coverage for injuries otherwise covered by a general liability policy, the exclusion clause does not apply where the insured's act is a result of negligence independent of, even though concurring with, his use of an automobile"); *Waseca Mut. Ins. Co. v.*

*Noska*, 331 N.W.2d 917, 923 (Minn.1983) (finding homeowner's coverage when insured caused a fire while driving smoldering garbage to landfill: "where act of placing live embers in the uncovered barrels was a cause of the fires, homeowner's policy afforded coverage for the risk, without regard to intervention of the contributing cause consisting of use of the truck"); *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 887 (Tenn.1991) ("[T]here should be coverage in a situation ... where a non[-]excluded cause is a substantial factor in producing the damage or injury, even though an excluded cause may have contributed in some form to the ultimate result and, standing alone, would have properly invoked the exclusion ...."); *see also Wallach v. Rosenberg*, 527 So.2d 1386, 1388 (Fla.3d Dist.Ct. App.1988) (quoting Couch, 11 Couch on Insurance 2d § 44:268 (rev. ed.1982)) (finding a jury question regarding coverage under all-risk policy where weather combined with negligence to cause loss because policy did not "contain[ ] a provision [that] specifically exclude[d] coverage where a covered and an excluded cause combine to produce a loss," and noting that such coverage may lie even when the insured risk is not "the prime or efficient cause of the accident"), *disagreed with by American Home Assurance Co., Inc. v. Sebo*, 141 So.3d 195 (Fla.2d Dist.Ct.App. 2013), *review granted by Sebo v. Am. Home. Assur. Co., Inc.*, No. SC14–897, 2014 WL 5093402 (Fla. Oct. 7, 2014); *Braxton v. U.S. Fire Ins. Co.*, 651 S.W.2d 616, 619–20 (Mo.Ct. App.1983) (finding coverage under comprehensive property policy containing exclusion for harm "arising out of the ownership or use of any firearm" where underlying claim was for negligent supervision of employee who shot and injured customer); *Houser v. Gilbert*, 389 N.W.2d 626, 630–31 (N.D.1986) (holding that vehicle insurer and farm liability insurer

In my view, the best way to reconcile *Eichelberger* with *Wilcha* is to recognize that the gist of all of the claims in *Wilcha, Filachek, Pulleyn,* and most of the other cases cited by the Majority addressed failures of supervision or entrustment directly associated with the use or operation of a vehicle. In these cases, not only did the accident result from the use or operation of the vehicle, but the underlying tort claim could not be separated from the vehicle's operation. In none of those cases did the act of negligence at issue entirely precede the introduction of a motor vehicle into the events precipitating the injury— or, as in *Eichelberger* and *Partridge*, work in tandem with, but independently of, the vehicle's use—such as the provision of alcohol based upon which Wolfe asserts Ross's liability in the instant matter.

The Majority dismisses this distinction with little discussion:

[Wolfe] attempts to distinguish *Filachek* as involving claims that a passenger "negligently plied the driver with alcohol and then negligently supervised the intoxicated driver's operation of the vehicle[.]" [Wolfe's] Supplemental Brief at 8.... [Wolfe] simply ignores the express language of the exclusion that focuses on whether the motor vehicle was the cause of the injury, not whether the insured's conduct giving rise to liability arose out of [the] use of a motor vehicle. The fact that the serving of alcohol to a minor subjected [Ross] to liability even

without the involvement of a motor vehicle does not change the fact that the policy language excludes coverage for injuries arising out of use of a motor vehicle. It is undisputed that the decedent's use of the [dirt bike] was both the proximate cause and the cause in fact of the injury. We find no ambiguity in the exclusionary language on the facts herein.

Maj. Op. at 889.

This analysis is irreconcilable with our reasoning in *Eichelberger*, which, unlike *Wilcha, et al.*, involved an assertion of coverage based upon a negligent act— stepping in front of Warner's vehicle—that might have been associated with the use of the automobile but was not inextricable from that use, as would be the case in a claim for negligent entrustment or supervision. Indeed, the Majority's rejection of Wolfe's argument would have required the contrary result in *Eichelberger*: There, also, we arguably "simply ignore[d] the express language of the exclusion that focuses on whether the motor vehicle was the cause of the injury, not whether the insured's conduct giving rise to liability arose out of [the] use of a motor vehicle." Maj. Op. at 889. And it is telling that the "express language" of the motor vehicle exclusion in the instant matter does not address causation head-on, rendering it as ambiguous on this point as we deemed it to be in *Eichelberger*.[8]

must share *pro rata* in judgment where vehicle-related act of negligence and non-vehicle-related act of negligence were involved in truck accident caused by mud carried onto highway by insured's vehicle); *S. Burlington v. Am. Fid. Co.*, 125 Vt. 348, 215 A.2d 508 (1965) (finding duty to defend despite "streets and sidewalks" exclusion, where injuries arose from negligent maintenance of culvert that caused plaintiff's car to fall into sinkhole in road); *Lawver v. Boling*, 71 Wis.2d 408, 238 N.W.2d 514, 521 (1976) (finding that,

when "a covered risk and an excluded risk concurred in causing injury," it is "apparent that the insurer ... is not being held to provide coverage for a risk [that] it did not contemplate and for which it received no premium").

8. Notably, the court in *Lawver, supra*, interpreted *Partridge* as relying not upon ambiguity in resolving the case in favor of coverage but, in a stronger determination, that it suffices that one covered risk independently con-

The distinction between *Eichelberger* and *Wilcha* is highlighted implicitly by the Majority's failure to cite any case in which the same or a similar motor vehicle exclusion was deemed unambiguously to exclude coverage that did not sound substantially in negligent supervision or entrustment, or in some equivalent circumstance where the insurance excluded coverage for an otherwise covered cause that was inextricably intertwined with an excluded cause.[9] It warrants emphasis that whether an insurance contract is ambiguous must be assessed in context; what is unambiguous in one circumstance may nonetheless be ambiguous in another. *See generally Eichelberger*, 434 A.2d

at 750–51. Thus, it is by no means untenable to maintain that the motor vehicle exclusion requires a different result in an entrustment case than in a case of concurrent or independent causation.

The Majority distinguishes *Eichelberger* on the basis that it "rested upon very different facts," Maj. Op. at 885, from those in the instant case. However, after reviewing that case, *id.* at 885–86, the Majority offers no material comment as to how those factual differences lead the Majority to conclude that this Court should favor *Wilcha* and *Filachek*, a non-binding federal case that essentially echoed *Wilcha*, over our earlier decision in *Eichelberger*. Specifically, the Majority does not

---

tributes to the injury because that risk expressly is covered by the policy. *See Lawver*, 238 N.W.2d at 521–22. We acknowledged as much in *Eichelberger*, but opted for the more restrained course of ruling that the language in question was ambiguous. *Eichelberger*, 434 A.2d at 752 (quoting *Partridge*, 109 Cal. Rptr. 811, 514 P.2d at 129) ("We recognize that the *Partridge* case is factually different from the instant case and that the court did find that both policies covered the accident for the reason that there were two joint causes to the accident[,] one auto-related and one non-auto[-]related. Nonetheless, it should be noted that the *Partridge* Court said that 'liability under the homeowner's policy could possibly be predicated upon the ambiguity of the exclusionary clause in the context of the instant accident. . . .' ").

9. *See, e.g.*, Maj. Op. at 891–93 (citing *Farmers Ins. Exch. v. Super. Court*, 220 Cal.App.4th 1199, 163 Cal.Rptr.3d 609 (2013) (finding no coverage for negligent operation of truck by homeowner who ran over and killed granddaughter); *Prince v. Un. Nat'l Ins. Co.*, 142 Cal.App.4th 233, 47 Cal.Rptr.3d 727 (2006) (finding no coverage under foster mother's homeowner's policy where she left children in hot car and they died); *Belmonte v. Employers Ins. Co.*, 83 Cal.App.4th 430, 99 Cal. Rptr.2d 661 (2000) (finding no coverage for negligent supervision where the child's injurious use of a van constituted the single proximate cause of the injuries); *Gurrola v. Great S.W. Ins. Co.*, 17 Cal.App.4th 65, 21 Cal.

Rptr.2d 749 (1993) (finding no coverage where the claimed negligent welding of a vehicle was intertwined with the use of the motor vehicle that led to injury); *Nat'l Am. Ins. Co. v. Coburn*, 209 Cal.App.3d 914, 257 Cal.Rptr. 591 (1989) (finding no coverage where parents failed to set parking brake while loading vehicle and a child moved the gear lever out of "park"); *see also U.S. Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App.3d 45, 716 N.E.2d 1201 (1998) (finding no coverage under malpractice exclusion for a claim of negligent credentialing because, like negligent entrustment of vehicle, the malpractice was necessary to, rather than independent of, the harm)). The Majority cites the above litany of California cases in an effort to establish that, even under *Partridge*, Wolfe would not be entitled to coverage, reading them either as abrogating *Partridge* or limiting it in such a way as to preclude coverage under the instant facts. *See* Maj. Op. at 891–93. But as the above parenthetical descriptions make clear, none of the cited cases involved independent, non-vehicular causes like the filing of the trigger mechanism in *Partridge* or the provision of alcohol in the instant case. Indeed, *post-Partridge* cases cannot fairly be said to have abrogated or diminished that case. Rather, these cases reinforce my view that entrustment and supervision cases can be distinguished on a principled basis from cases like the matter before us, where the vehicle served as the instrument of an injury that arose from vehicle-independent tortious conduct.

effectively distinguish *Eichelberger*'s conclusion that an exclusion materially identical to the exclusion in the instant case was ambiguous, and thus must be read in favor of the insured, because the policy did not specify whether the phrase "arising out of" applied both when the vehicle was an incidental or factual cause of the accident **and** when the vehicle was the proximate cause of the accident. Indeed, rather than distinguish *Eichelberger* from the instant case, the Majority seems to rely upon the proposition that we should favor *Wilcha* merely because it is more current than *Eichelberger*. *See* Maj. Op. at 886 (observing that *Wilcha* and *Filachek* were "decided decades after *Eichelberger*"). However, as one justice of our Supreme Court recently observed, a court "should not frustrate the fundamental principles of *stare decisis* by overturning a case that does not contravene the doctrinal underpinnings of our existing precedent and is not factually similar in regard to several crucial aspects [of] the case at bar." *Commonwealth v. Moore*, —— Pa. ——, 103 A.3d 1240, 1255 (2014) (Baer, J., concurring). I would not declare the desuetude of an older case when a principled distinction from subsequent cases provides ample explanation for the cases' disparate outcomes.

The Majority also rejects Wolfe's invitation to adopt the reasoning of the New Jersey Supreme Court in *Salem Group v. Oliver*, 128 N.J. 1, 607 A.2d 138 (1992). *See* Maj. Op. at 889–90. In *Salem Group*, the minor plaintiff was injured while operating the insured's ATV after the insured had given him alcohol. The court found that the insurer at least was obligated to defend the social host liability claims these events engendered:

> No one disputes that insurers are generally obligated to defend their insureds on social host claims. The critical question is whether the insurer can avoid that obligation because a separate excluded risk, the operation of an all-terrain vehicle (ATV), constitutes an additional cause of the injury. We find that the insurer remains obligated to defend the covered risk. It may not avoid that obligation simply because the operation of an ATV constitutes an additional cause of the injury.

\*　　\*　　\*

It is not at all clear that the exclusion for the operation of an ATV is to apply when the insured provides liquor to the victim, who then drives the insured's ATV. Arguably, the exclusion does not apply in that context. When a policy fairly supports an interpretation favorable to both the insured and the insurer, the policy should be interpreted in favor of the insured.

A contrary conclusion could defeat the reasonable expectations of the insured, which should be respected to the extent the policy's language allows. In certain contexts, if Newman had provided an ATV, alcoholic beverages, or both, the policy apparently would cover a resulting accident. Arguably, if the accident had occurred while [plaintiff] was driving the ATV on [the insured's] property, [the insured] would be covered. Or if [the insured] had provided [plaintiff] with alcohol and the accident had occurred while [plaintiff] was driving another's ATV, [the insured] arguably would be covered. Given those possibilities and the wording of the exclusion, [the insured] could reasonably expect that the policy would cover him when he provided both the ATV and the alcoholic beverages that contributed to the causation of an accident not on [the insured's] property.

*Id.* at 139 (citations omitted).[10] Notably, the New Jersey Supreme Court rejected the insurer's reliance upon two New Jersey precedents finding no coverage on the basis that those cases, unlike *Salem Group,* presented negligent entrustment or supervision claims inextricably intertwined with the operation of a vehicle. *Salem Group,* 607 A.2d at 139. The court held that "[t]hose opinions proceed[ed] on the assumption that negligent entrustment or supervision of a motor vehicle is intertwined with the ownership and operation of the motor vehicle.... In contrast, the serving of alcohol to a minor does not depend on the insured's ownership of a motor vehicle or its entrustment to another." *Id.* at 140.

The Majority makes much of the fact that at issue in *Salem Group* was the insurer's duty to defend the claim, not its obligation to provide coverage. *See* Maj. Op. at 890. While the Majority is correct that the duty to defend is broader than the duty to indemnify, *see Peccadillos,* 27 A.3d at 265,[11] the duty to defend found in *Salem Group* was based expressly (and necessarily) on its recognition that coverage **might** lie under the facts of that case. Despite

its qualification that it "h[e]ld not that the insurer may ultimately be liable under the policy, but only that it must honor its duty to defend," *Salem Group,* 607 A.2d at 140—an observation merely rooted in the question there presented—the court, in finding a duty to defend, necessarily found that coverage **could** lie. *See also Peccadillos,* 27 A.3d at 265 ("The obligation to defend arises whenever the complaint filed by the injured party may potentially come within the coverage of the policy."). It would be nonsensical and contrary to law to grant the insured a defense if a finding in favor of coverage on the facts as pleaded was not perceived to be a plausible legal outcome.[12] Moreover, the *Salem Group* court, in its repeated allusions to alternative but closely similar scenarios that would lead to coverage and its emphasis upon the reasonable expectations of the insured, strongly suggested that it was merely exercising restraint in not reaching the question of coverage prematurely, not that it believed an obligation to defend existed despite a negligible likelihood of coverage being found under the circumstances of that case, which resemble the

10. *Cf. Lawver,* 238 N.W.2d at 521 (holding that "the insurer ... is not being held to provide coverage for a risk [that] it did not contemplate and for which it received no premium").

11. As noted, *supra,* in *Peccadillos,* somewhat reinforcing *Eichelberger's* guiding principle, this Court, sitting *en banc,* found that the insurer owed a defense to a bar where some claims clearly fell within the policy's alcohol exclusion but at least one claim—that the bar improperly ejected an intoxicated patron when it knew or should have known that he would drive—was not included expressly excluded by the policy.

12. The Majority relies upon *Flomerfelt v. Cardiello,* 202 N.J. 432, 997 A.2d 991 (2010), to reinforce the proposition that *Salem Group,* in finding only a duty to defend when that was

the only question presented, somehow implied a refusal to grant coverage in an appropriate, factually similar case, but leaves out that *Flomerfelt* lent considerable support to my less restrained reading of *Salem Group.* Therein, the court observed, regarding New Jersey law, that "[i]n situations in which multiple events, one of which is covered, occur sequentially in a chain of causation to produce a loss, we have adopted the approach known as 'Appleman's rule,' pursuant to which the loss is covered if a covered cause starts or ends the sequence of events leading to the loss." 997 A.2d at 1000 (citing, *inter alia, Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc.,* 181 N.J. 245, 854 A.2d 378 (2004) (quoting 5 Appleman, Insurance Law & Practice § 3083 at 309–11 (1970))). Under that rule as stated, it seems more than likely that a New Jersey court would find coverage under the facts *sub judice.*

facts and circumstances *sub judice* far more closely than any other case cited herein or by the Majority.

In short, I find the learned Majority's dismissal of this case on that basis alone to be a red herring. The Majority's entire response to *Salem Group*, including that case's discussion of and reliance upon *Partridge*, is to treat as dispositive the distinction between determining whether an insurer owes a defense or coverage to an insured. This does not actually provide any assessment of *Salem Group's* soundness in its distinction between negligent supervision/entrustment claims from those in which two independent causes, one covered and one excluded, lead to injury. If *Salem Group* found, as I would, that the distinction may change the outcome in the context of the duty to defend, then it also found **in principle** that the distinction might, in an appropriate case, also change the outcome as to coverage. The Majority freights this distinction with more weight than it can bear.

In any event, *Salem Group*, like *Partridge*, merely provides guidance; it is unnecessary to reach the same result in this case (with respect to coverage rather than defense). *Eichelberger* and *Wilcha* suffice to require us to recognize that a case hinging upon negligent entrustment or supervision presents a circumstance legally distinct from a case in which the claims are based upon a cause that is antecedent to or concurrent with, and independent of, subsequent events that link that cause to the ultimate injury.

In this regard, *Wilcha*, itself, lends support to my view:

The fatal weakness of the appellants' contention for coverage lies in its failure to acknowledge one of the elements essential to recovery for negligent entrustment—the negligent operation of the motor vehicle. . . .

The plain wording of the exclusionary provision reveals the deficiency in this rationale. While liability (apart from coverage) for negligent entrustment is not conditioned upon the entrustor's ownership or use of the vehicle, negligent use by the one to whom it is entrusted is essential to recovery. **It is the concurrence of these dual elements—negligent entrustment by the owner or custodian of the instrumentality plus its negligent use by the entrustee—that is missing in the rationale of those cases upholding coverage.** Taken literally, [under] this line of reasoning—that negligent entrustment of the vehicle, and not its use, is the basis of insured's alleged liability— the injured party could recover absent any showing that the incompetent to whom the vehicle is entrusted caused the injury by his negligent use of the vehicle. As we have already observed, this does not comport with the elements that make up this tort concept. of negligent entrustment.

*Wilcha*, 887 A.2d at 1263 (quoting *Erie Ins. Exch. v. Transam. Ins. Co.*, 352 Pa.Super. 78, 507 A.2d 389, 396 (1986), *reversed on other grounds*, 516 Pa. 574, 533 A.2d 1363 (1987)) (emphasis added). In short, *Wilcha* limited its own scope based upon the very distinction that I would recognize in preserving *Eichelberger* and applying it in this case.[13]

---

**13.** At a minimum, *Wilcha* expressly excludes from its ambit (and without criticism) cases that do not feature the substantive intertwining of the vehicle and the underlying negligence claim that is characteristic of supervision and entrustment claims. This, in turn, highlights that the Majority's application of *Wilcha* would expand its scope at the expense of *Eichelberger*.

In this case, no element of the claim asserting that Ross negligently provided alcohol to Wolfe's decedent inherently required the involvement of a motor vehicle to result in liability. Rather, it required only harm arising from the provision of alcohol. Decedent might have fallen from a window or down a flight of stairs. He might have walked in front of speeding traffic in front of the house or fallen asleep in a full bath tub. And, perhaps most relevantly, Decedent might have injured himself in an accident while operating his own vehicle after leaving Ross's house. All things being equal, any of those scenarios may have resulted in coverage, provided that the instrument or vehicle in question did not belong to Ross. It beggars belief that a materially identical scenario would not require coverage—and as a practical matter in cases in which the defendant is insolvent or otherwise judgment-proof, present the risk of little or no recovery by the injured plaintiff—simply by virtue of which instrumentality connected Decedent's inebriation to the injury. *See Salem Group,* 607 A.2d at 139–40 (finding similar potential anomalies of coverage at odds with the insured's reasonable expectations).

To be clear, the automobile exclusion at issue in this case reasonably can be read to preclude coverage in this case. However, a clause is ambiguous when another reasonable reading leads to a contrary result. *Adamitis v. Erie Ins. Exch.,* 54 A.3d 371, 380 (Pa.Super.2012) (quoting *Kropa v. Gateway Ford,* 974 A.2d 502, 508 (Pa.Super.2009)) ("The provisions of an insurance contract are ambiguous if its terms are subject to more than one reasonable interpretation when applied to a particular set of facts.").[14] As in *Eichelberger,* I would

find that the exclusion at issue reasonably may be read to exclude coverage only in cases where the use of the automobile was intrinsic to the asserted tort, rather than serving as an independent cause of the injury. In so doing, my views are in harmony with the restrained application of *Partridge* ventured in *Eichelberger*—that the exclusion does not apply because it is ambiguous.

*Eichelberger, Partridge,* and *Salem Group,* in their assessments of what constitutes an independent tort that requires coverage notwithstanding the operation or use of an automobile, more closely align with the relevant facts of the instant case than do *Wilcha, Filachek,* or any of the other cases relied upon by the Majority. Consequently, I would find that the vehicle exclusion policy as applied to this case is ambiguous, and must be construed in favor of the insured. I respectfully dissent.

---

**14.** *Cf. Madison Constr. Co. v. Harleysville Mut. Ins.,* 557 Pa. 595, 735 A.2d 100, 110 (1999) (Cappy, J., dissenting) (finding ambiguity in the phrase "arising out of" as used in a pollu-

tion exclusion provision with regard to "whether the phrase requires merely a causal relationship (*i.e.,* a 'but for' relationship), or a proximate cause relationship").